# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

TRAVELERS INDEMNITY COMPANY,   )
as subrogee of SMOKY MOUNTAIN LASER  )
and IDM, INC.,   )
   )   **CIVIL ACTION NO. 3:02-CV-491**
   **Plaintiff,**   )   **(Phillips/Guyton)**
   )
**vs.**   )
   )
**INDUSTRIAL PAPER & PACKAGING**   )
**CORP., et al.,**   )
   )
   **Defendants.**   )


## MEMORANDUM AND OPINION


Plaintiff[1] has filed the instant action alleging that an accumulation of defective and/or unreasonably dangerous diffusion fluid caused or contributed to a building fire. Five motions for summary judgment [Doc. 70, Doc. 82, Doc. 84, Doc. 88, and Doc. 92] have been filed by defendants. The plaintiff has opposed these motions by filing responses. For the reasons that follow, defendants' motions for summary judgment are **GRANTED in part** and **DENIED in part**.

---

[1]For the purposes of this memorandum and opinion, the term "plaintiff" shall refer to the arcade and its operators, as well as Travelers Indemnity Company.

## I.   Summary of the Facts

As the law requires, all disputed facts and inferences are resolved most favorably for the plaintiff.  Furthermore, the Court merely provides an abridged summary of facts for the purposes of this opinion.

The fire that is subject of this lawsuit occurred on September 11, 1999, and damaged Q-Zar Amusement Center located at 716 Parkway, Gatlinburg, Tennessee.  This was an arcade business owned by Smoky Mountain Laser and IDM, Inc. ("Smoky Mountain").  The amusement complex was a two-story building.  The first floor contained a concession area, video machines, and a laser instruction room.  The second floor contained a laser arena that consisted of a maze of walkways to target centers.  The fire is alleged to have originated in a 15-ton HVAC unit and to have spread through the unit's duct system due to an accumulation of diffusion fluid in the HVAC system.  It appears that diffusion fluid was used in the fogging machines for the laser tag operations.

Plaintiff filed suit against the diffusion fluid manufacturers and/or sellers, Industrial Paper & Packaging Corp ("Industrial Paper"),[2] Venture Tech, Inc. ("Venture Tech"), Citgo Petroleum Corporation ("Citgo"), and Reel EFX, Inc. ("Reel EFX"), based upon products liability, breach of warranty, and negligence.   Plaintiff also filed suit against Ronald Ogle and Ogle's Repair Company ("Ogle and Ogle's Repair") based on negligence.  Specifically,

---

[2]JCL Management, Inc. is a company affiliated with Industrial Paper.  The Court collectively refers to JCL Management, Inc. and Industrial Paper as "Industrial Paper."

2

plaintiff's allegations against Ogle and Ogle's Repair are based upon the fact that Ogle serviced the HVAC system on September 3, 1999, eight days before the fire, and that the defendants failed to warn of or remove the accumulation of diffusion fluid in the HVAC system.

The fire caused $736,343.66 in damages. This figure includes $413,243.81 for the building, $198,432.85 for the content, and $124,667.00 for lost profits.

## II. <u>Law Applicable to Rule 56 of the Federal Rules of Civil Procedure</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual

3

dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### III.    Motion for Summary Judgment and applicable law

*A.    Industrial Paper*

Before May of 1994, Industrial Paper's salesman, Roger Bowles ("Bowles"), was given a sample of diffusion fluid used at the Q-Zar Amusement Center. Taking this sample to Venture Tech, Bowles found a substitute to market to Smoky Mountain. Smoky Mountain then began purchasing diffusion fluid from Industrial Paper. Thereafter, the fire occurred on September 11, 1999.

In reference to facts to support its summary judgment motion, Industrial Paper asserts that the product provided by Industrial Paper was the same as the sample taken from Q-Zar. Further, Industrial Paper states that the product was never opened nor altered when in Industrial Paper's possession and that Industrial Paper never made any representations regarding the product. Additionally, Industrial Paper claims that plaintiff's expert has not determined that there was anything wrong with the product; has not determined that there were any differences between the subject diffusion fluid and other

4

diffusion fluids; and indicated that Smoky Mountain had a responsibility to keep the diffusion fluid from accumulating in the HVAC system.

Based upon these facts, Industrial Paper argues summary judgment in its favor on the following grounds: (1) the product is not defective nor unreasonably dangerous; (2) Industrial Paper had no duty to warn; and (3) Industrial Paper is not liable based upon the sealed container doctrine (moreover, the exception to the sealed container doctrine, breach of warranty, does not apply in the instant matter). In response, the plaintiff has opposed Industrial Paper's grounds for summary judgment, as well as asserted that Industrial Paper is an apparent manufacturer.

     1.     Defective and/or Unreasonably Dangerous Product; Duty to Warn; and Causation

It is fundamental to any products liability action that there must be evidence that the product in question was defective or unreasonably dangerous. Under Tennessee law, "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by a product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." T.C.A. §29-28-105(a). There are statutory definitions for "defective condition" of products and "unreasonably dangerous" products. "Defective condition" means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption. T.C.A. §29-28-102(2). "Unreasonably dangerous" means that a product is dangerous to an extent

5

beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.  T.C.A. §29-28-102(8).

The unreasonably dangerousness of a product as well as a lack of warnings about a dangerous product that can serve the basis for a manufacturer's liability, are usually jury questions. *Harwell v. American Medical Sys.*, 803 F.Supp. 1287, 1297 (M.D.Tenn. 1992). It is normally a question for the jury's determination as to whether the product is in a defective condition or is unreasonably dangerous to the user. *Id.* The Court acknowledges that "the product itself need not be shown to be of defective manufacture.  It can be perfectly made, but is rendered unreasonably dangerous by the manufacturer by failure in its duty to warn of non-apparent dangers known or that should be known by the manufacturer." *Goode v. Tamko Asphalt Products, Inc.*, 1988 WL 99985 *3 (Tenn.Ct.App. June 26, 1988), *rev'd*, 783 S.W.2d 184 (Tenn. 1990) (reversed on grounds of insufficiency of the evidence).  Indeed, Tennessee law requires manufacturers to warn of hidden and unknown dangers in their products. *Shoemake v. Omiquip Inernational, Inc.*, 152 S.W.3d 567, 574-75 (Tenn.Ct.App. 2004).  In other words, "[r]elevant to the determination of whether a product is defective and/or unreasonably dangerous is the presence or absence of a statement accompanying the product which in some way informs the user of the danger.  This statement must be calculated to bring home to a reasonably prudent user of the product the nature and extent of the danger involved in using the product." *Harwell,*

6

803 F.Supp. at 1297 (internal citations omitted).

The plaintiff has essentially alleged that the diffusion fluid was unreasonably dangerous due to inherent dangers in the product that are not open and/or obvious and that would not be expected from an unsophisticated consumer, necessitating appropriate warnings. The plaintiff has produced sufficient proof such that a jury could find that the accumulation of diffusion fluid in the HVAC system caused and/or contributed to the fire.[3] While the plaintiff's expert did not allude to a manufacture defect, it is undisputed that the warning provided by Venture Tech stated that the product was "non-flammable."[4] The warnings of dangers must be sufficient in identifying the dangers posed by a product. *Harwell*, 803 F.Supp. at 1297. Thus, a reasonable juror could find that the warning provided by Venture Tech was inadequate, creating an unreasonably dangerous product.[5] However, the summary judgment analysis as to Industrial Paper does not end here.

2.     Sealed Container Doctrine

---

[3]Plaintiff's proof includes expert testimony from fire investigator, Rodney Fowler, and chemist, Dr. Andrew Armstrong. The Court has previously denied a motion in limine to exclude testimony of plaintiff's proffered expert witness Rodney L. Fowler.

[4]Industrial Paper has argued that the dangers of the product, i.e. flammability was apparent to the ordinary consumer. While a seller or manufacturer are not liable for failure to warn of obvious dangers associated with a product, *Permerton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 692-93 (Tenn. 1984), the Court finds that a reasonable juror could determine that the warning provided by Venture Tech was non-obvious and inadequate, creating an unreasonably dangerous product.

[5] In its argument, Industrial Paper states that the negligence of others in allowing the diffusion fluid to accumulate actually caused the fire. The Court notes defendant's assertion of the comparative fault doctrine and finds that the issue is within the province of jury determination.

7

According to Tennessee law, the seller of a product normally cannot be sued under products liability if the seller acquired and later sold the product in a "sealed container" and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product, which would or should in the exercise of reasonable care, reveal the existence of the defective condition. T.C.A. §29-28-106(a). As a caveat, however, the doctrine does not apply to a valid breach of warranty action, expressed or implied. T.C.A. §29-28-106(a)(1); *see also Wesson v. Woodworks, Inc.*, 1999 WL 188288 *5 (Tenn.Ct.App. Apr. 6, 1999). As to implied warranty of fitness for a particular purpose, the buyer must prove (1) that the seller was aware that the buyer had a particular purpose for which the goods were required; (2) that the seller knew that the buyer was relying on the seller's skill or judgment to provide the buyer with goods that were fit for that particular purpose; and (3) that the buyer must have actually relied on the seller's skill or judgment. T.C.A. § 47-2-315; *see also Lee's Home Center, Inc. v. Morris*, 2006 WL 1716797 * 4 (Tenn.Ct.App. June 21, 2006).[6]

Based upon the facts presented to the Court, the diffusion fluid was purchased by Industrial Paper from Venture Tech in sealed drums. The drums were then temporarily delivered to Industrial Paper's warehouse where they were never opened or modified. Later, when the drums were taken by Industrial Paper to Smoky Mountain's facility, they arrived in the same condition as when Industrial Paper had acquired them.

---

[6]Since the plaintiff has not put forth any evidence that Industrial Paper expressly warranted the goods fit for a particular purpose, the Court only focuses on an implied warranty analysis.

8

In response the defendant's motion, the plaintiff states that Industrial Paper is confusing its failure to inspect the product with not having an opportunity to inspect the product. Additionally, plaintiff argues that a company, such as Industrial Paper, should not be insulated from liability by simply "sticking its head in the sand." However, plaintiff has not offered any support for these contentions, and the Court is unable to find supportive authority for these novel arguments. In light of the facts presented to the Court, plaintiff's strict liability and negligence claims are barred as a matter of law by the sealed container doctrine.

The Court, however, is not persuaded that plaintiff's breach of warranty claim is likewise barred. When finding a product suitable for the needs of Smoky Mountain, Industrial Paper's salesman, Bowles, stated that he was "familiar with the reason that Q-Zar wanted the fluid." Further, Bowles "told [Venture Tech] what they did with it, which was they put it in a fogger and they fogged the inside of the building so it would make it more difficult to play a laser tag game." Since Industrial Paper was well aware of the use and purpose of the diffusion fluid, a reasonable juror could conclude that the plaintiff was relying upon Industrial Paper's skill or judgment to provide goods fit for the particular purpose and that the plaintiff indeed relied upon Industrial Paper's skill or judgment. Accordingly, plaintiff's breach of warranty claim survives summary judgment.

  3.  Apparent Manufacturer

As an additional argument in opposition to defendant's motion for summary

9

judgment, plaintiff asserts that Industrial Paper is an apparent manufacturer. The apparent manufacturer doctrine states that one who puts out as his own product a chattel by another is subject to the same liability as though he were the manufacturer. *Restatement 2d of Torts*, §400 (1964). "Hold out" (or "puts out") usually involves either a defendant's labeling or affixing to the product its own name or putting forth advertising identifying the defendant as the maker of the product. *Herbel v. Sherman Equipment*, 92 Ill.2d 368, 372, 65 Ill.Dec. 888, 891, 442 N.E.2d 199, 202 (1982) (citations omitted).

In the instant matter, however, the plaintiff has not put forth sufficient evidence that Industrial Paper represented the diffusion fluid as its own product. There is no evidence that Industrial Paper either labeled or advertised the product as its own nor are there other sufficient indications that Industrial Paper was leading its customers and the general public to believe that it actually manufactured the diffusion fluid. Accordingly, based upon the facts before the Court, Industrial Paper is not an apparent manufacturer.

B.    *Venture Tech*

Venture Tech filed its motion for summary judgment on the following theories: (1) Venture Tech is not liable to plaintiff by operation of the "sealed container" doctrine; (2) no evidence exists to support plaintiff's theory of causation; and (3) plaintiff's claims against Venture Tech are barred by the three year statute of limitations on property claims and the four year statute of limitations on warranty claims. As previously mentioned, the Court has found that the plaintiff has put forth sufficient evidence to support its theory of causation,

10

i.e. that the diffusion fluid is defective and/or unreasonably dangerous and that the product caused or contributed to the fire at Q-Zar Amusement Center.[7] Therefore, only the remaining two arguments are considered.

### 1. Statue of Limitations

As mentioned above, the fire occurred on September 11, 1999, and the plaintiff filed its complaint on September 5, 2002. Initially, the plaintiff only filed suit against Industrial Paper, JCL Management, Inc., Ogle and Ogle's Repair, John Doe Company, and Kel-San, Inc.[8] However, upon Industrial Paper's filing of its amended answer naming Venture Tech, plaintiff filed suit against Venture Tech pursuant to T.C.A. §20-1-119 on March 30, 2004.

T.C.A.§20-1-119 provides in relevant part as follows:

20-1-119. Comparative fault – Joinder of third party defendants. --
(a) In civil actions, where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statue of limitations, or named in an amended complaint filed within the applicable statue of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against such person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of filing of the first answer or first amended answer alleging such person's fault, either:
(1) Amend the complaint to add such person as a defendant pursuant to Rule 15 of the Tennessee Rules of Civil Procedure and cause process to be issued for that person; or
(2) Institute a separate action against that person by filing a summons and compliant ...
(b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statue of limitations ....

---

[7]The Court has fully analyzed Industrial Paper's arguments regarding causation and inadequate proof that the diffusion fluid was defective and/or unreasonably dangerous and found that these arguments are either unpersuasive and/or involve questions of fact.

[8] Kel-San, Inc. has since been voluntary dismissed from the case.

Venture Tech disputes the application of the statute to the instant matter. Essentially, Venture Tech argues that it was identified as a potential tortfeasor to plaintiff before being formally named in Industrial Paper's amended answer and that, since plaintiff did not timely instigate proceedings against Venture Tech upon discovery, plaintiff is barred from bringing Venture Tech into the suit. Specifically, Venture Tech argues that the plaintiff was apprised of Venture Tech's involvement in the matter as earlier as September 21, 1999 when it received a facsimile allegedly indicating that Venture Tech was the supplier or manufacturer of the diffusion fluid.[9] Further, Venture Tech claims that Bowles, the former sales associate of Industrial Paper, informed plaintiff that Venture Tech was the supplier of diffusion fluid in his April 28, 2003 deposition.[10] Defendant asserts that since plaintiff did not sue Venture Tech at either of the two instances, plaintiff is barred from filing suit against Venture Tech by the statute of limitations,[11] as well as T.C.A.§20-1-119.

In response, plaintiff asserts that the facsimile did not place the plaintiff on notice that Venture Tech may have been the manufacturer of the diffusion fluid. Rather, plaintiff argues that the MSDS merely shows from where the document was faxed. Plaintiff claims

---

[9]Plaintiff received the subject fascimile within the statute of limitations period.

[10]Plaintiff received this information outside the statute of limitations period.

[11]In Tennessee, property tort actions must be brought prior to the expiration of three years from the date of accrual, and a breach of warranty action must be brought within four years of the date the product was accepted by the purchaser. T.C.A. §28-3-105; T.C.A. §28-3-105(2).

12

that it does not explain or identify Venture Tech as the manufacturer of the diffusion fluid.[12]

Further, in regard to Bowles' deposition, plaintiff states since the statute of limitations had

passed, it is irrelevant whether the plaintiff knew or should have known that Venture Tech

sold diffusion fluid in that T.C.A. §20-1-119 requires the identified tortfeasor to be named

in an answer or amended answer. Plaintiff states that once this was done, plaintiff

appropriately filed a lawsuit against Venture Tech within ninety (90) days.

Initially, the Court notes that the discovery doctrine does not apply in this particular

situation. The Court acknowledges that Venture Tech did not argue the discovery doctrine;

however, case law cited by Venture Tech discusses the legal argument. The rule applies

only in cases where the plaintiff does not discover, and reasonably could not be expected

to discover, that the plaintiff had a *right of action,* rather than who the proper parties to an

action may be. *See Potts v. Celotex Corp.*, 796 S.W.2d 678, 680-81 (Tenn. 1990). "It is

immaterial that the [plaintiff] had not identified the defendant as the party who allegedly

wronged [it]." *IFC Nonwovens, Inc. v. Owens-Corning Fiberglass Corp.*, 1 F.3d 1241, 1993

WL 272445, *3 (6th Cir. July 19,1993); *see also Schultz v. Carter*, 2005 WL 1668287, *2-3

(E.D. Tenn. July 18, 2005). Indeed, once a party is put on notice that components of a

product may be responsible for an injury, the statute of limitations begins to run regardless

of whether the exact identities of the defendants are known. *Id.*

---

[12]This statement may appear to be contradictory to the plaintiff's assertions that Venture Tech is an apparent manufacturer. However, the contentions are not altogether antonymous. Further, it is the jury function to sort such facts.

13

Turning to the statute, T.C.A. §20-1-119 allows a plaintiff ninety days in which to assert a claim against an alleged comparative tortfeasor if two conditions are met. *Towns v. Sunbeam Oster Co.*, 50 S.W.3d 446, 452-53 (Tenn.App. 2001); *Kizziah v. Fire Management Systems*, 2006 WL 218026, *7 (E.D.Tenn. Jan. 27, 2006). First, a defendant must name the comparative tortfeasor as one who caused or contributed to the injury or damage of which the plaintiff seeks recovery. *Id.* Second, the comparative tortfeasor must be a non-party to the suit. *Id.* The statute makes no reference to the plaintiff's diligence in discovering the identity of the potentially liable parties. *Id.*

However, Venture Tech asserts that the plaintiff had knowledge that a third party, Venture Tech, may have been at fault for the complained injuries long before the amended answer; therefore, T.C.A. §20-1-119 is inapplicable. In support of its argument, defendant cites a Sixth Circuit decision, *Whittlesey v. Cole*, 142 F.3d 340 (6ᵗʰ Cir. 1998).[13] Defendant's reliance on *Whittlesey* is misplaced in that subsequent to the *Whittlesey* decision, T.C.A. § 20-1-119 was analyzed by the Tennessee Supreme Court in *Townes v. Sunbeam Oster Co. Inc.*

_____

[13]In *Whittlesey*, the plaintiff allegedly died on May 29, 1993 as a result of medical malpractice during treatment at a Naval Hospital. *Whittlesey*, 142 F.3d at 341. The survivor filed an administrative claim under the Federal Tort Claim Act against the Department of the Navy and two doctors. *Id.* at 342. On July 7, 1994, the Navy learned and informed the plaintiff that the doctors were not employed by the government, but rather were civilian doctors employed by a private company, PHP Healthcare Corporation. *Id.* The Navy then denied the claim on February 17, 1995. *Id.* However, the plaintiff did not file her cause of action against the Navy, the two doctors, and PHP Healthcare Corporation until July 7, 1995. *Id.* The Navy filed its answer denying liability reiterating that the doctors were employed by a private company. *Id.* The Court considered both the discovery doctrine and T.C.A. §20-1-119 and then found that the plaintiff had knowledge or at least sufficient knowledge to engage in an investigation of his claim, which would have included a determination of the treating physician. The Court felt that this knowledge was acquired long before the Navy's answer (long before the complaint was filed), and granted summary judgment. *Id.* at 343-45.

In *Townes*, the Tennessee Supreme Court initially articulated the following in reference to federal and state law application:

> State law must be applied in diversity cases filed in federal court that do not involve a federal question. The federal courts must look to the law of the state as declared by its highest court when they decide questions of state law. In the absence of an authoritative pronouncement by the state's highest court, the federal courts may either certify the state law question to the state's highest court for an authoritative interpretation, or ascertain and apply the state law as they understand it from the available sources.

*Townes,* 50 S.W.3d at 452 (internal citations omitted). Then, the Tennessee Supreme Court stated its authoritative pronouncement holding that since T.C.A. §20-1-119 makes no reference to the plaintiff's diligence in discovering the identity of potentially liable parties, the plaintiff's knowledge of the existence of other persons who might be liable for the plaintiff's injuries is irrelevant. *Id.* at 452-53. Further, the Tennessee Supreme Court concluded that T.C.A. §20-1-119 is remedial and should be construed liberally to enable plaintiffs to have their claims adjudicated on the merits. *Id.* at 451.

In light of the above, this Court must hold that any knowledge of other non-parties who may have potential liability for a plaintiff's injuries is immaterial in the application of T.C.A. §20-1-119. Further, the plaintiff has met the requirements of T.C.A. § 20-1-119. First, Venture Tech was named by defendant Industrial Paper in its amended answer as one who caused or contributed to the injury or damages for which the plaintiff seeks recovery. Second, Venture Tech was not a party to the lawsuit. Finally, plaintiff filed its actions against parties, including Venture Tech, within the ninety days allowed to add comparative tortfeasors. Accordingly, plaintiff's claim is not barred by the statute of

15

limitations.

2.    Sealed Container

As in the situation involving Industrial Paper, Venture Tech asserts that it cannot be held liable for plaintiff's damages under the sealed container doctrine, and the plaintiff responds that Venture Tech held itself out to be the apparent manufacturer of the diffusion fluid. However, the facts are slightly different. Venture Tech's name and information is stated on the MSDS that accompanied the product and that was provided to the plaintiff.

As mentioned above, the apparent manufacturer doctrine states that one who puts out as his own product a chattel by another is subject to the same liability as though he were the manufacturer. *Restatement 2d of Torts*, §400 (1964). According to *Prosser, Law of Torts*, 3rd Ed., §96, one who labels a product with his own name or otherwise represents it to be his own is to be treated on the same basis as if he had manufactured it, and so is liable for any negligence on the part of the actual maker. In *Bogart*, the Court found that a "purchaser of an article ought to be able to rely upon the labeling of a product to identify the manufacturer; and in the absence of the name of the real manufacturer, the marketer named on the product ought to be conclusively presumed to be the manufacturer." *Bogart v. STP Corporation*, 1985 WL 301940 *3 (Tenn.Cir.Ct. Oct. 2, 1985). In the concurring opinion, Justices Samuel L. Lewis and William C. Koch held that "a seller of a product packaged under its own trade name cannot take advantage of the 'sealed container' defense when it [is] involved in any way in the production of the product." *Id.* at *6. The

16

*Bogart* concurrence goes on to cite *Walker v. Decora, Inc.*, 225 Tenn. 504, 471 S.W.2d 778 (Tenn. 1971)[14] in which the Tennessee Supreme Court held that a company labeling a product with its own trade name or otherwise represented the product to be its own, treated the defendant company as the manufacturer, and held the defendant company strictly liable for damages resulting from the product. Lastly, the *Bogart* concurring opinion articulates that the rationale for imposing liability on the apparent manufacturer was a species of estoppel. *Id.* at 7. "[T]he vendor, through its labeling or advertising of a product, caused the public to believe that it was the manufacturer and to buy the product in reliance on the vendor's reputation and care in making it, was held to have assumed the obligations of a manufacturer and to be estopped to deny its identity as the manufacturer." *Herbel*, 92 Ill.2d at 371, 65 Ill.Dec. at 890, 442 N.E.2d at 201 (citations omitted). The loss caused by an unsafe product should be borne by those who create the risk of harm by marketing and distribution of unsafe products, those who derive economic benefit from placing them in the stream of commerce, and those who are in a position to eliminate the unsafe character of the product and prevent the loss. *Id.*, 92 Ill.2d at 378-79, 65 Ill.Dec. at 894, and 442 N.E.2d at 205.

In analysis, the Court notes that Venture Tech asserts that the diffusion fluid was manufactured by Citgo in its answer. While Citgo provides the product with a different MSDS referencing the manufacturer as Lyondell Lubricants, Venture Tech provided a

---

[14] The *Walker* decision predates the enactment of Tennessee Products Liability Act of 1978 [T.C.A. §29-28-101 *et seq.*]. The product liability legislation contains certain provisions that have direct bearing upon the circumstances under which the "sealed container" defense can be invoked. However, the legislative history/debates make it evident that the General Assembly did not intend to modify the *Walker* decision. *Bogart*, WL 301940 at *8-9.

different MSDS to the plaintiff through Industrial Paper, with the name "Venture Tech Corporation" and that the product was "manufactured for Industrial Paper & Packaging Corp."[15]   No other companies are listed on the MSDS.   Industrial Paper's salesman, Bowles, testified that the plaintiff received the MSDS with the 55 gallon drum of diffusion fluid.  Specifically, Bowles states that "on the drum it had the label and the Material Safety Data Sheet attached."   Although the Court acknowledges that the application of the apparent manufacture doctrine is tenuous, there is sufficient evidence of an issue of fact as to whether Venture Tech held itself out as the manufacturer.

### 3.    Breach of Implied Warranty and Privity

Venture Tech argues that its breach of warranty claim is barred for lack of privity and because the product was not defective and/or unreasonably dangerous to the consumer at the time of sale.  The Tennessee General Assembly abolished the requirement of privity on April 10, 1972.  The legislation enacted provides that in all cases of action for personal injury or property damage brought on account of negligence, strict liability, or breach of warranty, privity shall not be a requirement to maintain said action.  *See* T.C.A. §29-34-104; *Wheeler v. John Deer Co.,* 1987 WL 18896 *2 (Tenn.Ct.App. Oct. 27, 1987); *Commercial Truck & Trailer Sales, Inc. v. McCampbell*, 580 S.W.2d 765, 772 (Tenn. 1979). Accordingly, defendant's argument fails.

---

[15]While the plaintiff refers to this MSDS as being attached to the deposition of Roger L. Bowles, Exhibit D, plaintiff fails to provide same.  However, plaintiff provides the MSDS in response to the motion for summary judgment filed by Ogle and Ogle's Repair.  Furthermore, the exact same MSDS delivered to the plaintiff was provided by Venture Tech, as well as Citgo.

C.    Citgo


Citgo has filed its motion for summary judgment asserting that there is no evidence that the product was defective or unreasonably dangerous; the product's warning was adequate; the plaintiff cannot show that Citgo breached an implied warranty of fitness for a particular purpose; and that Citgo was not negligent in its actions.  Particular to the facts of plaintiff's claim against Citgo is that Citgo provided its own MSDS, which discussed the flammable nature of the product.  Further, Citgo passed these warnings along to its customers.  However, as previously discussed, Venture Tech's MSDS was provided to the plaintiff instead of Citgo's MSDS.  While the Court has previously addressed the alleged defective and/or unreasonably dangerous nature of the product and the duty to warn against dangers of the product in reference to Venture Tech's MSDS,[16] the Court below addresses Citgo's duty to warn end users.  Further, the Court analyzes plaintiff's claim of breach of implied warranty of fitness for a particular purpose and plaintiff's claim of negligence.

---

[16]In its memorandum of law, Citgo immersed in argument voicing opposition to plaintiff expert Armstrong's reliability and qualifications relating to adequacy of warnings. The proper procedure to oppose or dispute the testimony of an expert is by filing a motion in limine to exclude expert testimony (motion for a *Daubert* hearing) in accordance with the scheduling order.

In any event, Dr. Armstrong merely asserts that "non-flammable" does not properly address the true fire hazards and misleads the reader to conclude that the material will not burn.  In particular, Armstrong criticized the use of "nonflammable" to describe the diffusion fluid given that the diffusion fluid is combustible and will burn once it is heated to a temperature above its flash point and that once above the flash point, the diffusion fluid will produce sufficient vapors to sustain an open flame.  Moreover, Armstrong stated that the auto-ignite temperature of the diffusion fluid ranges from 415°F to 500 °F. Dr. Armstrong deals with MSDS's on a regular basis.  He reviews, analyzes, and uses the information provided on the MSDS as a regular part of his consulting work.  In the Court's opinion, Dr. Armstrong's testimony is therefore admissible.  Any arguments regarding Dr. Armstrong's lack of drafting, testing, etc. of warning will be proper areas for cross examination.  Likewise, Citgo's argument that Dr. Armstrong has not prepared any alternative warnings may be addressed through cross examination.

19

1.      MSDS Provided by Citgo

The record reflects that Citgo did provide a MSDS to its customers, which includes vendors who resold the product to end-users.  On approximately seven pages of the MSDS, Citgo cautions that the product may be a fire hazard and/or that a user should be careful with heat or flame.  Citgo acknowledges that its MSDS did not make its way to the plaintiff but asserts that it took all proper steps to distribute its warnings about the product.[17] Although Citgo asserts that a duty to warn is discharged when a defendant delivers product warnings to a customer, this is not a legal conclusion.  The determination as to whether the supplier's duty has been reasonably discharged may come within the function of the trier of fact.

The Restatement (Second) of Torts § 388, Comment n (1965) suggests a balancing of four factors to determine if the warning given to the middleman is reasonably certain to reach those in the field: (1) the risk of the injury; (2) the seriousness of the harm which might result; (3) the practicability and expense of placing a warning directly on the product; and (4) the reliability of the middleman as a conduit of the warning.  *See also Whitehead v. Dycho Company, Inc.*, 775 S.W.2d 593, 597-598 (Tenn. 1989).  In light of these considerations, the Court finds that a jury may determine that the risk of injury and seriousness of harm are substantial factors, considering that the product was used in a

---

[17]Citgo asserts that the process of sending MSDS's to customers was almost completely automated and that each customer received the current version of the MSDS for any product it purchased, as well as any updates that were issued.  Further, Citgo states that its MSDS's for any product were sent free of charge at a customer's request.

20

children/adult entertainment center. Moreover, Citgo was aware that this product was at least "Slightly Combustible!" and that the product in mist or spray form may be flammable, indicating that Citgo was aware of the risk and seriousness of harm that could result. Also, Citgo could have placed the MSDS information directly upon the product's surface to ensure that the middlemen passed on the warnings. *See Shoemake.*, 152 S.W.3d at 575; *Whitehead*, 775 S.W.2d at 598 (warning labels concerning dangers of naphtha were placed upon the 55 gallon drums when they were delivered to Magnavox); *Byrd v. Brush Wellman, Inc.*, 753 F.Supp. 1403, 1405-06 (E.D.Tenn. 1990) (besides other methods of conveying information of the dangers of beryllium, defendant placed warning labels on the outside of the product). Citgo's delivery of MSDS information, an automation system and delivery of the MSDS upon a request practice, is clearly less likely to ensure that the warning will be passed on to end customers. Lastly, a jury may find that Citgo's function as a bulk supplier leaves them little opportunity to investigate whether the middleman actually passes on the proper warnings, and therefore, greater precautions should have been taken on the front end by Citgo. The Court concludes that a jury must determine whether Citgo's duty to warn was discharged when it delivered warnings to a middleman.

2.     Implied Warranty of Fitness for a Particular Purpose and Negligence

Citgo states that there is no evidence indicating that Citgo knew of the purpose for which the product was sold to the ultimate user. As mentioned above, T.C.A. §47-2-315 states that where the seller has any reason to know any particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to furnish

21

suitable goods, there is an implied warranty that the goods shall be fit for such purpose. In short, the Court finds that a reasonable juror could determine that Citgo knew that its product could be used in a smoke machine in view of Citgo's MSDS indicating that the diffusion fluid could be used in a mist or vapor form. Additionally, in light of the above, plaintiff has produced sufficient evidence of negligence on part of Citgo.

In summation, plaintiff's claims against Citgo contain issues of fact for the jury to determine.

D.    *Reel EFX*

Venture Tech asserted fault against Reel EFX in its answer filed on September 10, 2004. In particular, Venture Tech asserted that it was not the manufacturer of the diffusion fluid and that Industrial Paper may have sold diffusion fluid to plaintiff manufactured by Kel-San, Inc., Reel EFX, MDG Fog Generators, or others. However, Industrial Paper does not assert Reel EFX as a potential comparative tortfeasor. In fact, Industrial Paper's former salesman, Bowles, states that he only bought the product through Venture Tech.

Reel EFX filed its motion for summary judgment upon three grounds: (1) plaintiff's claims are barred by the statute of limitations, and T.C.A. §20-1-119 is not applicable in the instant matter; (2) the plaintiff has not produced evidence that the product was defective and/or unreasonably dangerous; and (3) the plaintiff has not produced sufficient proof that Reel EFX supplied fluid to any of the parties in the lawsuit. Since the Court has previously

22

addressed the first and second[18] arguments finding that summary judgment is not warranted upon the facts presented, the Court only considers the third argument.

In order to survive summary judgment, it is essential that the plaintiff prove that the product manufactured and sold by Reel EFX and/or the warnings proximately caused the injuries plaintiff alleges to have sustained. *Barnes v. The Kerr Corporation*, 418 F.3d 583, 589 (6th Cir. 2005). "A fundamental principle of traditional product liability law is that the plaintiff must prove that the defendant supplied the product which caused the injury." *Rodrigues v. General Electric Corp.*, 204 F.Supp.2d 975, 976 (E.D. Tex. 2001) (citations omitted). After a plaintiff has been given a reasonable opportunity to substantiate its claims, summary judgment may be entered if the plaintiff has failed to establish an essential element of his case, which it will bear the burden of proof at trial. *Celotex*, 477 U.S. 321-35; *see also Bryant v. Tri-County Elec. Membership Corp.*, 844 F.Supp. 347 (W.D.Ky. 1994) (holding that when the most favorable view of the evidence leads to the unavoidable conclusion that a plaintiff cannot identify the movant as a manufacturer, summary judgment is appropriate).

In the instant matter, Reel EFX was named in the action by another party. Reel EFX searched the invoice records and financial data related to its sales of diffusion fluid and other products to the present. Based upon the investigation, Reel EFX asserts that it did

---

[18]The Court acknowledges that Reel EFX's motion for summary judgment based upon the statute of limitations and application of T.C.A.§20-1-119 involves additional facts. Nevertheless, the Court finds that the plaintiff lawfully brought Reel EFX into the litigation.

not sell any diffusion fluid to any of the parties named in the lawsuit, nor did it sell any diffusion fluid to any person or business in the state of Tennessee. Specifically, Reel EFX states that its only commercial transaction in Tennessee from 1995 to the present was a sale for parts in 2002 to Armstrong Photography for banded lights. Moreover, plaintiff is unable to show that Reel EFX sold diffusion fluid to any party to the lawsuit related to the fire that occurred at Smoky Mountain. The Court finds that simply relying upon Venture Tech's assertion of fault against Reel EFX without further proof is not enough. Accordingly, plaintiff's claims against Reel EFX are dismissed.

### E.    Ogle and Ogle's Repair

Viewing the facts favorably to the plaintiff, defendants were contacted by the plaintiff with a complaint of a general air conditioning unit problem. Shortly thereafter, Ogle and Ogle's Repair arrived at Smoky Mountain, inspected the unit, and determined that the compressor needed to be replaced. On September 3, 1999, eight days before the fire, Ogle and Ogle's Repair replaced  of one of three compressors contained in the HVAC condenser unit. After the fire, fire investigator/plaintiff's expert Fowler interviewed Ogle. Ogle related to Fowler that every time he worked on the units, the interior was saturated with an oily film. Ogle said that he would clean and wipe some of the film from the units every time he was called to do any type of repair on the air conditioners. For the 4 or 5 years prior to the fire, Ogle stated that he and Robert Montgomery (one of the owners of plaintiff's center) talked about the units getting old and that replacements were needed. In the instant action,  plaintiff claims that Ogle and Ogle's Repair were negligent in that

24

Ogle failed to warn Smoky Mountain that the diffusion fluid was present in the HVAC system and/or negligent in failing to remove the diffusion fluid from the system. In response, Ogle and Ogle's Repair filed a motion for summary judgment specifically claiming that the plaintiff cannot prove breach of a duty and that any alleged breach of duty did not proximately cause the fire. Again, since the Court has already held that the plaintiff produced sufficient evidence of causation, the Court will only consider defendants' arguments concerning duty and breach of duty.

"A claim of negligence requires proof of the following elements: (1) duty of care owed by a defendant to a plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of duty; (3) injury or loss; (4) cause in fact; and (5) proximate, or legal cause." *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted). "Properly defined, duty is the legal obligation owed by the defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Id.* (citations omitted). Once it is determined that a defendant owes plaintiff a legal obligation to conform to a reasonable person standard of conduct, i.e. the duty, the question is whether the defendant failed to exercise reasonable care under the circumstances. *Id.*

Ogle and Ogle's Repair previously filed a motion for summary judgment on essentially the same grounds it asserts in the subject motion. Additional discovery has been conducted regarding the facts of the case since the Court's order denying summary judgment. Nevertheless, the Court again finds disputed issues of material facts, which, if

25

resolved in the plaintiff's favor, could support a jury verdict for the plaintiff. The parties assert conflicting evidence regarding the service call and the condition of the HVAC unit prior to the fire.  Whether the plaintiff can show that defendants were negligent should decided by a jury after the plaintiff has had an opportunity to put on his proof.


**VI.**     <u>**CONCLUSION**</u>


For the reasons hereinabove set forth, defendants' motions for summary judgment [Doc. 70, Doc. 82, Doc. 84, Doc. 88, and Doc. 92] are **GRANTED in part** and **DENIED in part.**  Defendant Reel EFX's motion for summary judgment is **GRANTED in its entirety**, and Reel EFX is dismissed as a defendant in this case.  Defendant Industrial Paper's motion for summary judgment as to plaintiff's strict liability and negligence claims are **GRANTED**, but Industrial Paper's motion as to plaintiff's breach of warranty claim is **DENIED**.  Further, the remaining motions for summary judgment filed by defendants,

Venture Tech, Citgo, and Ogle and Ogle's Repair, are **DENIED in their entirety**.  The

remaining parties will prepare the case for trial.


**IT IS SO ORDERED.**



                         **ENTER:**


                         s/Thomas W. Phillips
                         United States District Judge